UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **MARTIN MATOCHA, AS THE OWNER, AND LOUISIANA LIMITS, LLC, AS OWNER *PRO HAC VICE*, OF THE M/V LOUISIANA LIMITS** | **CASE NO.  2:19-CV-00365** |
| | **JUDGE JAMES D. CAIN, JR.** |
| | **MAGISTRATE JUDGE KAY** |

<u>**MEMORANDUM RULING**</u>

Before the court is a Motion for Summary Judgment [doc. 12] filed by Martin Matocha, who brought this limitation action in his capacity as owner of the M/V LOUISIANA LIMITS. Claimant Michael Blanco opposes the motion. Doc. 14.

I.
**BACKGROUND**

This suit arises from an accident that occurred aboard the M/V LOUISIANA LIMITS, a 2003 Blue Wave bay boat owned by Martin Matocha and Louisiana Limits, LLC. Doc. 12, att. 3, p. 1. The vessel is manufactured with a white, diamond-bladed, non-skid surface. Doc. 12, att. 4, p. 8; doc. 12, att. 5, p. 9. At the time of the accident, Mr. Matocha testified, this surface was in like-new condition. Doc. 12, att. 4, p. 8.

Mr. Matocha is the sole member of Louisiana Limits, LLC, a company that offers charter fishing trips. *See* doc. 12, att. 2, p. 1. On October 27, 2018, Mr. Matocha took claimant Michael Blanco and two of Mr. Blanco's friends, Matt Hendry and Myles Kingsbery, on a trip aboard the M/V LOUISIANA LIMITS. This was Mr. Blanco's third

trip with Mr. Matocha, with one prior trip on the vessel involved in this case. Doc. 12, att. 5, pp. 6–8. Mr. Blanco could not recall any incidents or concerns about the condition of the vessels on the prior trips. *Id.* Mr. Blanco had also operated his own fishing charter service from 2010 until 2018, and had several years of personal and professional experience fishing from bay boats. *Id.* at 2–3.

On the morning of October 27, around 10:30 am, Mr. Blanco fell while fishing by the starboard bow of the vessel. *Id.* at 23. He alleges that he slipped in a layer of mud that was covering the deck, and that these slippery conditions had also caused Mr. Kingsbery to fall and cut his hand 30 to 40 minutes earlier. *Id.* at 19–23. Mr. Blanco testified that he hit an ice chest as he fell and felt his ribs break. *Id.* at 24. A short while later he told Mr. Matocha that he needed medical attention. Doc. 14, att. 2, p. 127. He was transported to an emergency room and diagnosed with a collapsed lung and tear in his aorta. *Id.* at 127–28. Because of these injuries, he testified, he has undergone multiple operations and still endures pain and physical limitations. *Id.* at 128–29.

Mr. Matocha and Louisiana Limits, LLC (collectively, "limitation plaintiffs") filed the instant limitation action in this court, seeking to limit the value of any claims against them to the amount and value of their interest in the M/V LOUISIANA LIMITS (alleged to be $11,500). Doc. 1. Mr. Blanco then filed a claim in the proceeding, alleging in relevant part that the deck was unreasonably slippery and that Mr. Matocha failed to warn him of this dangerous condition. Doc. 4. Limitation plaintiffs now move for summary judgment, asserting that the deck condition was an open and obvious hazard and that the undisputed

facts show that they did not breach their duty of care. Doc. 12. Mr. Blanco opposes the motion. Doc. 14.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

The parties agree that the case falls within the court's admiralty and maritime jurisdiction. Doc. 4, p. 4. Accordingly, general maritime law applies to the claims asserted here. *See, e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 507 (2008); *Palmer v. Fayard Moving and Transp. Corp.*, 930 F.2d 437, 441 (5th Cir. 1991). To prevail on a negligence claim under maritime law, a plaintiff must show that: (1) the defendant owed him a duty; (2) the defendant breached the duty; (3) the plaintiff sustained damages; and (4) the defendant's wrongful conduct caused the plaintiff's damages. *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005). The duty element is determined by the foreseeability of the harm suffered by the complainant. *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). "A duty is owed only with respect to an interest that is foreseeably jeopardized by an act or omission." *Penn Maritime, Inc. v. Rhodes Elec. Svcs., Inc.*, 41 F.Supp.3d 507, 516 (E.D. La. 2014).

Mr. Matocha stated that it was his practice to wash down the M/V LOUISIANA LIMITS with a mild detergent and a scrub brush after every trip and to pressure wash it on a weekly basis. Doc. 12, att. 4, p. 6. Prior to the October 27 trip, however, the boat had not been used in over three weeks and Mr. Matocha did not see a need to wash it because of heavy rains that fell right before the trip. *Id.* at 7. He also testified that the boat's non-skid surface was "like brand new" in October 2018. *Id.* at 8. Mr. Blanco testified, however, that

when the sun came out after their pre-dawn departure, he could see that the deck was covered with mud. Doc. 12, att. 5, pp. 13–15. Mr. Matocha admitted that neither dirt, sand, nor mud would typically accumulate on the surface of his boat during a fishing trip. Doc. 12, att. 4, p. 6.

Mr. Blanco admitted that water and fish slime would accumulate on the deck "through the natural course of fishing." Doc. 12, att. 5, p. 5. He also testified that there were towels on the boat and that he knew he should mop up slick conditions on the deck. Doc. 12, att. 5, p. 24. Mr. Hendry, however, recalled seeing a significant accumulation of water in another area of the boat and stated that towels would not have helped had there been a similar accumulation where Mr. Blanco was standing. Doc. 14, att. 2, p. 40. Mr. Kingsbury could not recall seeing mud on the deck but observed both sand and dead shrimp. Doc. 12, att. 6, p. 2. Mr. Hendry testified that he could not recall if he had seen fish blood, fish slime, water, or mud on deck. Doc. 12, att. 11, p. 4. Both individuals, however, made statements closer to the time of the accident in which they generally recalled mud or other slippery substances on the deck.[1] Mr. Hendry also testified that he believed "there were some issues with the boat, whether it [was] not having slip resistant something or the condition of the deck that . . . likely contributed to [Mr. Blanco's] fall," though he admitted

---

[1] In a statement provided two weeks after the accident, Mr. Hendry stated that "[It] was noted at the time that the boat was unusually slippery with a fair amount of water and dirt/sand sloshing about." Doc. 14, att. 2, p. 57. Two weeks after that, he provided a recorded statement to claimant's counsel. There he recalled "quite a bit of mud and sand and water sloshing around in the boat" and that the deck was slippery, though he could not say exactly what was causing the slipperiness. *Id.* at 60–61.
      Mr. Kingsbury also provided a recorded statement to claimant's counsel about one month after the accident. There he stated that he noticed the slick deck soon after boarding, and that he believed it was caused by a combination of fish slime and moisture from the fog. *Id.* at 67–68. He confirmed that he had fallen about thirty minutes before Mr. Blanco and that the men were moving around slowly to try to keep from falling. *Id.* at 68–69.

that he did not know exactly how Mr. Blanco fell or whether the deck in that area was slippery. Doc. 14, att. 2, p. 40.

Because Mr. Blanco was an experienced fisherman who was admittedly aware of slippery conditions on the deck, Mr. Matocha maintains that the deck was an open and obvious hazard and that he breached no duty in failing to take other measures to remedy it or warn of it. He likens the matter to *Chiasson v. Brand Energy Solutions, LLC*, where this court recently granted summary judgment in favor of a vessel owner who was alleged to have caused a third-party contractor's injuries by failing to remove all mud from the rig. 2020 WL 1695139, at *3 (W.D. La. Apr. 6, 2020). In that matter, however, defendants showed that the tank in question "was clean, dry and sealed on February 3, 2016 – over forty days before Plaintiff's accident – and [that they] had no further involvement with any of the vessel's tanks or its mud system thereafter." *Id.* Here, on the other hand, there is evidence suggesting that Mr. Matocha failed to properly clean the vessel before this trip and that the deck could have been unreasonably slippery as a result rather than from the usual slick conditions that occur over the course of a fishing trip.[2] The court cannot resolve the discrepancies between witness accounts on the exact nature of any hazard on the deck, its origin, Mr. Blanco's ability to remedy or avoid it, or the effectiveness of the boat's non-skid surface without evaluating credibility, which is beyond the scope of a summary judgment motion. Accordingly, there are genuine issues of fact precluding judgment for the limitation plaintiffs.

---

[2] At this stage the court is not considering evidence that Mr. Matocha subsequently painted the deck with non-skid paint, as this would likely be excludable under Federal Rule of Evidence 407.

-7-

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 12] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 2nd day of June, 2020.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**